NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHIRLEY Y. M. CUMMINS, DAVID P. GIAMELLARO, CAROLYN A. GONZALEZ, ALBERT E. MILLER, ROSA CARMINA RODRIGUEZ, FOR THEMSELVES, ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, AND AS REPRESENTATIVES OF THE PLAINTIFF CLASS CERTIFIED IN CARABALLO V. U.S., CIVIL NO. 1997/27(D. V.I. 2000),**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2166

---

Appeal from the United States Court of Federal Claims in No. 1:23-cv-00308-KCD, Judge Kathryn C. Davis.

---

Decided:  August 14, 2026

---

ROBERT G. MULLENDORE, Robert G. Mullendore, P.S., Missoula, MT, argued for plaintiffs-appellants.

GALINA I. FOMENKOVA, Commercial Litigation Branch,

Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CLAUDIA BURKE, PATRICIA M. MCCARTHY, BRETT SHUMATE.

_____

Before REYNA, SCHALL, and CUNNINGHAM, *Circuit Judges.*

REYNA, *Circuit Judge.*

Plaintiffs in this class action case are current or retired federal employees who have lived and worked in non-foreign areas outside the contiguous United States. Plaintiffs asserted claims against the United States for underpayment of salary and retirement benefits. The United States Court of Federal Claims dismissed their claims for lack of subject-matter jurisdiction. For the reasons below, we affirm.

## BACKGROUND

In 2023, current and retired federal employees living in "non-foreign areas" of the United States brought suit against the government for underpayment of salary and retirement benefits. Non-foreign areas are, *inter alia*, "States, commonwealths, territories, and possessions of the United States outside the 48 contiguous United States." 5 C.F.R. § 591.205. These include, for example, Hawaii, Alaska, and Puerto Rico. *Id.*

### I.

This case concerns two components of non-foreign federal employees' salaries: cost-of-living allowances and locality pay. We begin with a discussion of the statutory framework for each.

### A. Cost-of-Living Allowances

Federal employees in non-foreign areas receive a cost-of-living allowance ("COLA") pursuant to 5 U.S.C. § 5941 and Executive Order No. 10,000. Historically, COLA rates

were based on "(1) living costs substantially higher than in the District of Columbia; (2) conditions of environment which differ substantially from [those] in the continental United States and warrant an allowance as a recruitment incentive; or (3) both of these factors," but were capped at 25 percent of the rate of basic pay.  5 U.S.C. § 5941(a) (1966).

Under the Civil Service Retirement System ("CSRS") and the Federal Employees Retirement System ("FERS"), "basic pay" is the salary a federal employee receives for purposes of retirement calculations.  *See* 5 U.S.C. §§ 8331(3), 8401(4).  The statutes explicitly exclude certain types of pay from basic pay, including "bonuses, allowances, overtime pay, [and] military pay."  5 U.S.C. §§ 8331(3), 8401(4).  The Office of Personnel Management ("OPM") has interpreted these statutes to exclude COLA from basic pay for purposes of retirement calculations.

OPM conducted annual surveys to determine COLA rates until Congress changed the compensation scheme for non-foreign employees in 2009, as discussed in Section I.B.2, *infra*.  *See* 5 C.F.R. § 591.223 (dividing non-foreign areas into three groups and explaining that "OPM conducts a survey in each COLA area once every 3 years on a rotational basis").

## B.  Locality Pay

### 1.  Federal Employees Pay Comparability Act of 1990 ("FEPCA")

In 1990, Congress introduced locality-based comparability payments to offset pay disparities among federal and non-federal workers doing "the same levels of work" within a given locality.  Federal Employees Pay Comparability Act of 1990, Pub. L. No. 101-509, § 529, 104 Stat. 1389; *see also* 5 U.S.C. § 5304(d)(1)(A).  Congress instructed the President to direct an agent to prepare a report that (A) compares rates of pay of federal and non-federal workers in

each locality, (B) identifies each locality in which a pay disparity exists and specifies the size of the disparity, and (C) recommends comparability payments to reduce pay disparities. 5 U.S.C. § 5304(a), (d)(1)(A)–(C) (1990). Congress further instructed the President to "provide for or adjust comparability payments" based on the report. *See id.* § 5304(d)(2).

Locality pay differs from COLA in that it is considered part of "basic pay" for retirement purposes. *See id.* § 5304(c)(2)(A).

Congress explicitly excluded employees in non-foreign areas from being included in a "pay locality." *See id.* § 5304(f)(1)(A) (providing that "each General Schedule position (*excluding any outside the continental United States, as defined in section 5701(6)*) shall be included with a pay locality" (emphasis added)).[1]

### 2.   Non-Foreign AREA Act of 2009

The exclusion of COLA and inclusion of locality pay in retirement benefits calculations for non-foreign and contiguous United States employees, respectively, created disparities in retirement benefits among federal workers in non-foreign areas versus those in the contiguous United States. To eliminate these disparities, Congress expanded the locality pay system to include non-foreign area federal employees. 5 U.S.C. § 5304(f)(1)(A) (2009); *see also* Non-Foreign AREA Act of 2009, Pub. L. 111-84, §§ 1911–19, 123 Stat. 2190, 2619–27 (amending 5 U.S.C. §§ 5304, 5941 and 39 U.S.C. § 1005(b)).

Congress provided guidance for introducing locality pay and phasing out COLA in a manner designed to protect

---

[1]    The term "'continental United States' means the several states and the District of Columbia, but does not include Alaska or Hawaii." 5 U.S.C. § 5701(6).

employees' take home pay.  *See* Non-Foreign AREA Act §§ 1914–15, 123 Stat. 2621–22.  Congress phased in locality pay for non-foreign employees over a period of three years and transitioned COLA from an annual calculation to a set formula such that it could be gradually phased out.  *See id.* § 1914, 123 Stat. 2621 (5 U.S.C. § 5304 Note providing transition schedule for locality-based payments for each non-foreign area); 5 U.S.C. § 5941(c)(2)(B).

To determine locality pay for the newly eligible non-foreign employees, Congress suggested that the Bureau of Labor Statistics conduct "separate surveys to determine the extent of any pay disparit[ies]" in non-foreign areas.  Non-Foreign AREA Act § 1915(a)(3), 123 Stat. 2621–22.  Congress further suggested each area with a pay disparity exceeding a threshold be treated as a separate pay locality.  *Id.* § 1915(a)(4), 123 Stat. 2621–22.

## II.

Plaintiffs filed a class action complaint in the United States Court of Federal Claims ("Federal Claims Court") in March 2023.  Plaintiffs filed an amended complaint in August 2023, asserting six claims falling into two categories: four claims pertaining to salary and two for retirement benefits.  J.A. 38–41.  In their salary claims, Plaintiffs alleged entitlement to locality pay during the period from January 1, 1994, through December 31, 2009.  Plaintiffs also alleged continuing entitlement to COLA at the rates that were in effect on December 31, 2009.  Plaintiffs contended that their exclusion from locality pay and Congress's phase-out of COLA constituted violations of due process and equal protection guaranteed by the Fifth Amendment and unconstitutional bills of attainder.  In their retirement benefits claims, Plaintiffs argued that the government's agencies must correct their payroll records to reflect the amounts of locality pay that Plaintiffs were entitled to receive during the period from January 1, 1994, through December 31, 2009, and must pay, with interest,

the additional retirement benefit amounts that Plaintiffs would have been entitled to had they received locality pay during that period. Plaintiffs also alleged that COLA "is and at all times was an integral part of base pay and basic pay." J.A. 40. They contended that their retirement annuities should be increased "on account of the inclusion of COLA in base pay and basic pay." *Id.*

The Federal Claims Court dismissed all claims for lack of jurisdiction. *Cummins v. United States*, 171 Fed. Cl. 527, 536 (2024). Regarding the salary claims, the court found that Plaintiffs had not identified a money-mandating source of law to satisfy jurisdiction under the Tucker Act and that the court lacks jurisdiction to issue the type of equitable relief requested. *Id.* at 532–35. Regarding the retirement benefits claims, the court found that Plaintiffs' claims challenge the Office of Personnel Management's ("OPM") calculation of retirement benefits for employees under the CSRS or the FERS. *Id.* at 535–36. The court found its review of such a challenge is precluded by the Civil Service Reform Act's exclusive review process, which requires the challenge to be brought before the Merit Systems Protection Board ("MSPB"). *Id.*

We have jurisdiction to review Federal Claims Court decisions under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Plaintiffs challenge the Federal Claims Court's dismissal as to all six claims. We first address whether the Federal Claims Court has jurisdiction under the Tucker Act to hear Plaintiffs' salary claims. Plaintiffs contend that the Federal Claims Court has jurisdiction to decide their salary claims because "constitutional analysis of money-mandating statutes is an essential part, and the responsibility, of the United States Court of Federal Claims." Appellants' Br. 30. We then address whether the Federal Claims Court or this court has jurisdiction to hear Plaintiffs' retirement benefits claims. Plaintiffs argue that this court, the United

States Court of Appeals for the Federal Circuit, has jurisdiction to decide as a matter of law in the first instance whether COLA should be included in the calculation of retirement benefits, and should do so without requiring a "dress rehearsal" before the MSPB. Appellants' Br. 33.

This court reviews decisions of the Federal Claims Court on issues of law de novo, and on findings of fact for clear error. *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314 (Fed. Cir. 2006). We review dismissals for lack of subject matter jurisdiction de novo. *Id.*

## I. Salary Claims

Plaintiffs allege that the statutory provisions excluding them from receiving locality pay and reducing their COLA are unconstitutional and therefore void. Appellants' Br. 11. They contend that the statutes must be administered as if the provisions did not exist. *Id.* Plaintiffs deny that they seek declaratory judgment; rather, they assert their allegations "depend solely upon the Tucker Act, 28 U.S.C. § 1491, for jurisdiction." Appellants' Br. 21.

The Tucker Act waives sovereign immunity for certain monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). The Tucker Act does not, however, in and of itself, create a substantive right enforceable against the government. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). Instead, a claimant must point to some other source of law that can be fairly interpreted as mandating compensation, i.e., "money-mandating." *See id.*

Here, Plaintiffs' salary claims are based on FEPCA (introducing locality pay) and the Non-Foreign AREA Act (amending 5 U.S.C. § 5941 to phase out COLA). Plaintiffs argue that if the court were to disregard provisions of those statutes because they are unconstitutional, the statutes would have money-mandating effect. Appellants' Br. 11 ("The unconstitutional provisions are parts of larger

'money-mandating' statutes. . . . [The provisions] must be disregarded, and the statutes must be administered as if the provisions did not exist.").

To this point, Plaintiffs argue that the Federal Claims Court has jurisdiction to "engage in constitutional analysis of money-mandating statutes," as evidenced by "consistent decisions" of the Federal Claims Court and this court. Appellants' Br. 23. Specifically, Plaintiffs seek the Federal Claims Court's consideration of FEPCA without the provision that excludes them from receiving locality pay from 1994–2009, and the Non-Foreign AREA Act without the provision phasing out COLA. J.A. 38–40; Appellants' Br. 11.

Section 1491(a)(1), the provision of the Tucker Act at issue here, provides that the Federal Claims Court "shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon . . . any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). We have interpreted § 1491(a)(1) as providing jurisdiction over suits involving statutes and regulations that we have deemed money mandating, i.e., statutes or regulations that explicitly or implicitly mandate monetary compensation as to the plaintiff. *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011). A plaintiff's claim, however, must be one for "actual, presently due money damages." *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (citation modified). "It is not enough that the court's decision . . . will ultimately enable the plaintiff to receive money from the government." *Id.* Thus, the Federal Claims Court has jurisdiction over claims seeking presently due monetary compensation for a violation of a money-mandating statute. *See United States v. Mitchell*, 463 U.S. 206, 218 (1983); *Lummi Tribe of the Lummi Rsrv., Washington v. United States*, 870 F.3d 1313, 1319 (Fed. Cir. 2017).

We have also held that when a money-mandating statute contains a provision that is unconstitutional, the Federal Claims Court has jurisdiction over the plaintiff's § 1491(a)(1) claim to deem that provision unconstitutional and then proceed to the merits of plaintiff's entitlement to money damages under the modified statute. *Gentry v. United States*, 546 F.2d 343, 354 (Ct. Cl. 1976); *Kanemoto*, 41 F.3d at 645–46.

For example, in *Gentry*, the plaintiff challenged a "live-with" requirement for receipt of benefits under the Civil Service Retirement Act of 1930. 546 F.2d at 344–45. The plaintiff survived his deceased father but was denied survivorship benefits because he did not live with his father prior to his father's passing, as required by the Act. *Id.* at 344. The United States Court of Claims ("Court of Claims"), a predecessor to this court, considered whether it could "disregard, on constitutional grounds, one provision of a statute, and render judgment on the provisions that remain standing (if severable)." *Id.* at 345. The Court of Claims held that it could. *Id.* at 347–48, 354. The court concluded that the plaintiff's claim, grounded in the statute when read in light of the Fifth Amendment, "states a claim for money presently due, not requiring further action on anyone's part to create the entitlement thereto." *Id.* at 346.

In *Kanemoto*, we held that the Federal Claims Court had jurisdiction to "interpret" a statute in response to the appellants' constitutional challenge and "render a judgment against the United States." 41 F.3d at 645. The named plaintiff, a United States citizen of Japanese descent, was interned with her family during World War II and then sent to Japan as part of a prisoner exchange. *Id.* at 642. She sought to receive $20,000 in restitution under the Civil Liberties Act of 1988, but the Act included a provision denying reparations to individuals who relocated to a country while the United States was at war with that country. *Id.* at 643. The plaintiff challenged the provision's constitutionality. *Id.* We held that the Federal Claims

Court had jurisdiction to hear her case because the statute, disregarding the unconstitutional provision, mandated presently due damages to the plaintiff. *See id.* at 645–46 ("The Court of Federal Claims under its Tucker Act jurisdiction can interpret the statute and render a judgment against the United States that will provide Kanemoto with the entire relief she sought in the first place from the [Office of Redress Administration]—the $20,000 statutory amount of restitution.").

*Gentry* and *Kanemoto* differ from the present case because in each, once the unconstitutional provision in the money-mandating statute at issue was disregarded, the plaintiff was left with a claim seeking presently due money damages under the statute, i.e., a money-mandating provision.

Here, the statutes upon which Plaintiffs rely, even without the challenged provisions, are not money-mandating as to Plaintiffs. The modified statutes do not entitle Plaintiffs to "presently due monetary damages." *See Lummi*, 870 F.3d at 1319 (holding that statute was not money-mandating because "the underlying claim is not for presently due money damages. It is for larger strings-attached NAHASDA grants—including subsequent supervision and adjustment—and, hence, for equitable relief."). Instead, Plaintiffs' request that the Federal Claims Court address the modified statutes necessarily implicates equitable relief against the government. The Federal Claims Court lacks jurisdiction to grant this equitable relief. *See id.* at 1318–19.

If the provision of FEPCA that expressly excluded nonforeign employees from the receipt of locality pay from 1990–2009 were struck, there would be no framework dictating an amount presently due to Plaintiffs. As the government argues, there would be a "vacuum" left that only Congress could fill. *See* Appellee Br. 24–26. FEPCA mandates that locality pay be calculated by comparing General

Schedule and non-federal salary data for comparable jobs within a given geographic region. 5 U.S.C. § 5304(d)(1)(A). That data was not collected for non-foreign areas until 2009, when Congress extended locality pay to non-foreign federal employees and created processes to determine the amount to pay them. *See id.* § 5304(f)(1) (extending locality pay to federal employees in non-foreign areas); Non-Foreign AREA Act § 1915(a), 123 Stat. 2621–22 ("It is the sense of Congress that . . . the Bureau of Labor Statistics should conduct separate surveys to determine the extent of any pay disparity . . . that may exist with respect to positions located in [non-foreign areas]."). Without the processes initiated by Congress, Plaintiffs cannot claim entitlement to presently due monetary damages. We conclude, therefore, that FEPCA does not mandate money damages presently due to Plaintiffs, with or without the provision excluding Plaintiffs from receiving locality pay.

Similarly, if the Federal Claims Court struck the provision of the Non-Foreign AREA Act that phased out COLA, Plaintiffs would be left with a vacuum, not an entitlement to presently due monetary damages. Prior to Congress's enactment of the Non-Foreign AREA Act, OPM "conduct[ed] a survey in each COLA area once every 3 years on a rotational basis and survey[ed] the Washington, DC, area concurrently with each COLA area survey." 5 C.F.R. § 591.223. With the Non-Foreign AREA Act, Congress introduced a COLA phase-out formula that eliminated the need for ongoing surveys. *See* 5 U.S.C. § 5941(c)(2)(B). OPM's suspension of the surveys means that Plaintiffs cannot claim entitlement to presently due monetary damages. Like FEPCA, the Non-Foreign AREA Act does not mandate monetary damages presently due to Plaintiffs, with or without the provision phasing out COLA.

To render monetary judgment for Plaintiffs' claims would require the Federal Claims Court to (1) instruct the Bureau of Labor Statistics to collect locality data for 1994–2009; (2) instruct the President's agent to determine

locality pay for the years of 1994–2009 based on the collected data; (3) order OPM to determine COLA payments for 2010 to the present without the aid of annual COLA surveys; and (4) order OPM to resume conducting annual COLA surveys.  Such actions to enjoin fall outside the Federal Claims Court's jurisdiction.  *See Bowen v. Mass.*, 487 U.S. 879, 905 (1988) (finding no jurisdiction in the Federal Claims Court where petitioner's suit was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward).  The Federal Claims Court, however, "does not have the general equitable powers of a district court to grant prospective relief." *Id.*

Moreover, Plaintiffs' prayer for relief is not limited to payment of COLA and locality pay, which implicitly invoke equitable remedies.  Plaintiffs explicitly seek prospective equitable remedies that are likewise outside the Federal Claims Court's jurisdiction.  Plaintiffs request a "partial judgment . . . including provisions requiring Defendant to prevent further violations of law from occurring after the date of the partial judgment."  J.A. 44.  Plaintiffs further seek a "permanent injunction requiring Defendant and its agencies henceforward to comply with applicable laws." J.A. 45.  Plaintiffs describe the injunction as follows:

> To reduce the risks of noncompliance, the injunction should require Defendant and its agencies (*i*) to provide substantial and effective opportunities for Class members and Class counsel to submit comments or objections prior to any decision to publish a proposed rule, if the rule concerns, interprets, or regulates any aspect of the legal rights of Class members with respect to salaries, annuities, and benefits, and (*ii*) to respond promptly and constructively to any recommendations by Class counsel for amendment or rescission of rules, or for issuance of new rules, concerning federal employment in non-foreign areas.

*Id.* In these requests, Plaintiffs seek to modify the government's future practices with respect to Plaintiffs' compensation. It is well settled that the Federal Claims Court lacks jurisdiction to grant such relief. *Bowen*, 487 U.S. at 905.

In view of the foregoing, we conclude that the Federal Claims Court lacks jurisdiction to grant the relief that Plaintiffs request. We do not reach the question of whether the challenged provisions of FEPCA and the Non-Foreign AREA Act are unconstitutional. *See Ex parte McCardle,* 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

## II. Retirement Benefits Claims

Plaintiffs raise two retirement benefits claims. The first stems from their alleged entitlement to locality pay from January 1, 1994, through December 31, 2009. Plaintiffs contend that the government's agencies must correct their payroll records to reflect the amounts of locality pay Plaintiffs should have received, and must pay the additional retirement benefit amounts that Plaintiffs would have been entitled to had they received that locality pay. Because Plaintiffs' locality pay claim depends entirely on their salary claims, over which the Federal Claims Court does not have jurisdiction, we hold that the Federal Claims Court likewise lacks jurisdiction to hear that claim.

Plaintiffs' second claim challenges OPM's practice of excluding COLA from retirement calculations. Plaintiffs contend that this court has jurisdiction to decide in the first instance as a matter of law whether that practice is contrary to the intention of Congress and the President. Appellants' Br. 32–34. We disagree.

Plaintiffs' second retirement benefits claim falls under CSRS or FERS. Congress has specified that CSRS shall be administered, and claims thereunder adjudicated, by OPM. *See* 5 U.S.C. § 8347(a) ("The Office of Personnel Management shall administer this subchapter."); *id.* § 8347(b) ("The Office shall adjudicate *all* claims under this subchapter." (emphasis added)). Similar provisions exist for FERS. *See id.* § 8461(b), (c).

Congress further specified that a claimant may appeal a decision by OPM regarding CSRS to the MSPB. 5 U.S.C. § 8347(d)(1) ("[A]n administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the [MSPB] under procedures prescribed by the Board."). Likewise for FERS. *Id.* § 8461(e)(1). Final decisions of the MSPB are only appealable to this court. *See id.* § 7703(b)(1)(A). This means that the MSPB is not, as asserted by Plaintiffs, a dress rehearsal but rather the main act.

Plaintiffs have cited no cases supporting their proposition that this court has authority to review their retirement benefits claim when OPM and the MSPB have not first done so. Nor do Plaintiffs argue that the Federal Claims Court had jurisdiction to decide their claim.

We hold that neither this court nor the Federal Claims Court has jurisdiction to decide Plaintiffs' second retirement benefits claim.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons stated above, we affirm.

## **AFFIRMED**

### COSTS

No costs.